IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | **COMPLAINT FOR** |
| | ) | **FORFEITURE *IN REM*** |
| v. | ) | |
| | ) | Civil Action No.: 3:18cv389 |
| APPROXIMATELY $47,910 IN FUNDS | ) | |
| SEIZED FROM WILLIAM FRANKIE | ) | |
| BREWER, | ) | |
| Defendant. | ) | |

Now comes the United States of America, Plaintiff herein, by and through R. Andrew Murray, United States Attorney for the Western District of North Carolina, in a civil cause of forfeiture, and respectfully states the following:

**INTRODUCTION**

1. This is a civil action *in rem* against approximately $47,910 in United States Currency seized from William Frankie Brewer pursuant to the provisions of 21 U.S.C. § 881 and 18 U.S.C. § 981 for a violation of 18 U.S.C. § 1961(l), which constitutes a specified unlawful activity under 18 U.S.C. § 1956(c)(7)(A).

2. This action seeks the forfeiture of all right, title, and interest in the above-captioned property where "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to any offense constituting a "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7) is [also] subject to forfeiture. 18 U.S.C. § 981(a)(1)(C).

3. Procedures for this action are mandated by 21 U.S.C. § 881, 18 U.S.C. § 983, 19 U.S.C. §§ 1602-1621 and, to the extent applicable, the Supplemental Rules for Admiralty or Maritime

Claims and Asset Forfeiture Actions. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355.

4. This Court has venue in this matter pursuant to 28 U.S.C. § 1395.

5. The defendant property has been seized on land, is now within, and during the pendency of this action will remain within the Western District of North Carolina.

6. The Defendant is all present and future interest in the following property:

   a. approximately $47,910 seized from William Frankie Brewer at the Charlotte Douglas International Airport on February 1, 2018.

## FACTUAL BACKGROUND

7. On February 1, 2018, William Frankie Brewer entered the Charlotte-Douglas International Airport as a ticketed passenger on American Airlines flight 1760 to Fort Lauderdale, Florida.

8. Brewer approached Transportation Security Administration (TSA) Checkpoint C and presented himself for screening in order to enter the secure passenger terminal area.

9. During the routine screening procedures used to examine all ticketed passengers entering the sterile area of the airport, Brewer's carry-on bag was examined with an x-ray machine.

10. That examination revealed an anomaly, which required TSA Officers to conduct an administrative search to determine if the anomaly was an item prohibited from being taken on board a commercial aircraft.

11. That search determined that the anomaly was bulk United States currency.

12. TSA completed the screening process and, pursuant to existing agreements, notified Homeland Security Investigations (HSI) Charlotte and the Charlotte-Mecklenburg Police Department (CMPD) that bulk currency had been discovered secondary to the security screening process.

13. CMPD Officer Andrew Hostutler responded to Checkpoint C and made contact with Brewer.

14. Officer Hostutler was in uniform and recognizable as a law enforcement officer.

15. Officer Hostutler reported that Brewer stated two individuals gave him $5,000 each and the remainder of the currency belonged to him.

16. Brewer told Officer Hostutler that he did not know how much money had was carrying but that he had at least $22,000 in his possession that he planned to use to play poker in Fort Lauderdale.

17. Brewer also told Officer Hostutler that he planned to travel from Fort Lauderdale, Florida to Las Vegas, Nevada to place super bowl bets for the people who gave him the $5,000 each.

18. HSI Special Agent Mark Hammond and US Customs and Border Patrol Officer Andrew Greer responded to Checkpoint C and made contact with Brewer.

19. SA Hammond and CBPO Greer identified themselves to Brewer and presented their credentials for his review.

20. Brewer stated that he was traveling to Fort Lauderdale and then planned to travel to Las Vegas to place bets on the Super Bowl.

21. The instant interview occurred three days prior to the Super Bowl.

22. When asked about the currency in his possession, Brewer stated that the two other individuals had given him $5,000 each and that he was going to use the money to place bets on the Super Bowl in Las Vegas for those individuals.

23. Brewer was advised that his statements indicated that he may be acting as an unlicensed money transmitter in violation of federal law.

24. SA Hammond then asked Brewer if he would be willing to continue the interview in the CMPD Airport Division office located inside Charlotte-Douglas International.

25. Brewer voluntarily agreed and followed SA Hammond and CBPO Greer to the CMPD Office.

26. Brewer maintained possession and control of his belongings while walking to the CMPD Office.

27. Once inside the CMPD Office, SA Hammond reminded Brewer that he was not under arrest and was free to leave at any time.

28. Brewer indicated that understood and agreed to allow SA Hammond to view the currency.

29. Brewer stated that he has traveled with money to gamble every year for twenty years and had never been questioned about the currency.

30. Brewer then repeated his earlier statement that two people had given him $5,000 each so that he could place Super Bowl bets for them.

31. When asked to identify the people who gave him $5,000, Brewer hesitated before answering that Fred Wilhelm and Nick Deese were the subjects who provided the currency.

32. Brewer stated that both subjects lived in Hartsville, South Carolina.

33. Brewer stated that he could not provide any telephone numbers for Wilhelm or Deese and that they could not be contacted because they were in-route to Las Vega.

34. Brewer stated that he planned to play poker at casinos in Florida.

35. Brewer stated that he planned to stay with his girlfriend or get a hotel room, but was unsure about his lodging plans.

36. When asked about his future travel plans, Brewer answered that he would stay in Florida until the following Wednesday then return to Charlotte in order to fly to Las Vegas.

37. When asked how he planned to place Super Bowl bets in Las Vegas if he was not arriving there until three days after the game, Brewer then stated that he was going to place the bets in Florida.

38. When asked exactly where he planned to place the bets, Brewer stated that there are people in Florida who take bets.

39. When Brewer as asked if he knew how much money was in his possession, he stated that everything but the $10,000 provided from Wilhelm and Deese belonged to him.

40. Brewer was again asked how much money was in his possession and he again stated that everything but the $10,000 from Wilhelm and Deese belonged to him.

41. SA Hammond noticed that Brewer was speaking very quickly and his voice was raised.

42. SA Hammond also noticed that Brewer was moving around in his seat and making exaggerated hand gestures.

43. SA Hammond advised Brewer again that his statements indicated he was acting as an unlicensed money transmitter.

44. Brewer responded again stating that he has done this every year for twenty years without any issues.

45. Brewer stated that he retired six or seven years earlier and previously owned a barbecue restaurant.

46. When asked about prior arrests, Brewer stated that he had been arrested in his thirties for Conspiracy to Distribute Cocaine but that "nothing came of it."

47. When asked again, Brewer stated that was his only arrest.

48. Brewer consented to the use of a narcotics detection canine to sniff the currency.

5

Case 3:18-cv-00389-MOC-DCK   Document 1   Filed 07/17/18   Page 5 of 9

49. The currency was placed into an unmarked paper bag and set on the floor with two other unmarked paper bags.

50. Officer Hostutler utilized narcotics detection canine Owen to sniff all three bags without prior knowledge as to which bag contained the currency.

51. When sniffing the bag that contained the currency, Owen alerted to the odor of narcotics.

52. Owen did not alert when sniffing any other bag.

53. Pineville Police Department Canine Handler/HSI Task Force Officer Todd Bradshaw then utilized narcotics detection canine Yona to sniff all three bags without prior knowledge as to which bag contained the currency.

54. When sniffing the bag that continued the currency, Yona alerted to the odor of narcotics.

55. Yona did not alert when sniffing any other bag.

56. Based on the positive canine alerts and Brewer's statements, the currency was seized under 18 U.S.C. § 981, 18 U.S.C. § 1955, 18 U.S.C. § 1960, and 21 U.S.C. § 881.

57. Brewer was advised of the seizure and observed as the currency was sealed inside a tamper proof evidence bag.

58. Brewer was provided with a property receipt and advised that he would receive formal notice of the seizure by mail with instructions for petitioning the government to have the currency returned.

59. Brewer then departed the CMPD Office.

60. Upon seizure, the currency was transported to Loomis where an official count was conducted.

61. The count revealed $47,910, composed of: 472 $100 bills, 13 $50 bills, and 3 $20 bills.

62. Further investigation revealed that, contrary to his statements to SA Hammond, Brewer has an extensive criminal history, which includes the following charges/convictions:

   a. April 17, 1981: Disorderly Conduct (Convicted)- Darlington County, South Carolina;

   b. October 11, 1985: Trafficking in Cocaine and Criminal Conspiracy to Traffic Cocaine (Convicted) - Lee County, South Carolina;

   c. July 10, 1996: Shooting into a Dwelling, Burglary First Degree, two counts of Assault with a Deadly Weapon (Dismissed) - Darlington County, South Carolina;

   d. October 12, 2000: Disorderly Conduct, Trespassing on State Park Property, Entering Premises After Warning (Dismissed) - Florence County, South Carolina; and

   e. May 26, 2009: Simple Assault and Battery (Convicted) - Horry County, South Carolina.

**PRAYER FOR RELIEF**

63. By virtue of the foregoing, all right, title, and interest in the defendant property vested in the United States at the time of the commission of the unlawful act giving rise to forfeiture, 21 U.S.C. § 881(h), and has become and is forfeitable to the United States of America.

64. Upon information and belief, the following persons may have or claim an interest in the defendant property:

> William F. Brewer
> 1912 Garland Drive
> Hartsville, SC 29950
>
> Noell P. Tin
> 301 East Park Avenue
> Charlotte, NC 28203

WHEREFORE, the United States of America respectfully prays the

Court that:

(1)  a warrant for the arrest of the Defendant be issued;

(2)  due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

(3)  judgment be entered declaring the defendant to be condemned and forfeited to the United States of America for disposition according to law; and

(4)  the United States be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action, including but not limited to the expenses of maintenance and protection of defendant property as required by 28 U.S.C. § 1921.

Respectfully submitted, this the 17th Day of July, 2018.

**R. ANDREW MURRAY**
**UNITED STATES ATTORNEY**

/s Tiffany Mallory Moore
Assistant United States Attorney
GASB #744522
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
Telephone: (704) 344-6222
Email: tiffany.moore2@usdoj.gov

8

Case 3:18-cv-00389-MOC-DCK   Document 1   Filed 07/17/18   Page 8 of 9

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff, | ) | VERIFICATION |
| | ) | |
| v. | ) | |
| | ) | |
| APPROXIMATELY $47,910 IN FUNDS | ) | |
| SEIZED FROM WILLIAM FRANKIE | ) | |
| BREWER, | ) | |
|     Defendant. | ) | |

Mark S. Hammond deposes and says under penalty of perjury;

I am a Special Agent with the Homeland Security Investigations and one of the agents assigned to this case.

I have read the foregoing Complaint and the factual information contained therein is true according to the best of my knowledge, information, and belief.

_____
Mark S. Hammond

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

I certify that Mark S. Hammond personally appeared before me this day, acknowledging to me that he signed the foregoing document.

This the 17th day of July, 2018.

Chaney Riddick
Notary Public
Mecklenburg County
North Carolina

_____
Notary Public
My Commission Expires: May 7, 2020